CASARO *v.* HUMPHREY ET AL.

(Decided December 5, 1927.)

*Mr. Alfred L. Steuer,* for plaintiff.

*Messrs. Wilkin, Cross & Daoust* and *Messrs. Garfield, Cross, MacGregor, Daoust & Baldwin,* for defendants.

SULLIVAN, P. J. This cause is here on appeal from the court of common pleas of Cuyahoga county, and it involves the question whether a judgment obtained at one term of the court, based upon an action commenced at a previous term, is a lien on the lands of the judgment debtor from the first day of the term, although actually rendered upon a subsequent day of the term.

The cause was tried upon an agreed statement of facts, which is as follows:

"(1) That on April 1, 1925, plaintiff, Guy Casaro,

filed an action in the common pleas court of Cuyahoga county, Ohio, against defendant Sarah Humphrey, the same being cause No. 240012, in said court. In his petition, the said plaintiff prayed for personal judgment in the amount of $1,800, with interest, and for foreclosure of a chattel mortgage; that personal service of summons was had upon said Sarah Humphrey, who subsequently filed an answer and cross-petition alleging a certain counter-claim in the amount of $1,000; that the action was tried during the September term of court in the year 1925, and personal judgment was rendered for said Guy Casaro against Sarah Humphrey for the sum of $1,245.50, plus court costs, the chattel mortgage was ordered foreclosed, and the chattels were ordered sold; that the said judgment and order of sale were entered upon the journal of the court on December 28, 1925; and that the first day of the September term of court was September 8, 1925.

"(2) That on September 8, 1925, Sarah Humphrey was the owner of parcel No. 1 described in the petition, being more particularly described as follows, to wit:

"'Situated in the city of Cleveland, county of Cuyahoga and state of Ohio, and known as being sublot No. 444 in James M. Hoyt's subdivision of part of original Brooklyn township, lots Nos. 28 and 33, as shown by the recorded plat in volume 3 of Maps, page 37 of Cuyahoga County Records, and being 35 feet front on the northwesterly side of Lorain street (now known as Lorain avenue), and extending back of equal width 132 feet deep, as appears by said plat, be the same more or less, but subject to all legal highways.'

"That said sublot No. 444 was subject to a mortgage to defendant the Mutual Building & Investment Company securing a promissory note in the principal amount of $12,000, dated August 21, 1925, filed for record August 28, 1925, and recorded in volume 3129, page 172, Records of Cuyahoga county, Ohio, and that title to said sublot remained continuously in Sarah Humphrey from September 8, 1925, until the transfer of title to defendants Julia C. Ballint and Erma Hirsch, hereinafter mentioned.

"(3) That defendants Erma Hirsch and Julia C. Ballint purchased said sublot No. 444 from defendant Sarah Humphrey for a valuable consideration, and Sarah Humphrey conveyed legal title to said purchasers subject to said mortgage by a warranty deed with release of dower duly executed and delivered, dated November 30, 1925, filed for record with the recorder of Cuyahoga county, Ohio, on December 18, 1925, at 12:37 o'clock p. m., bearing serial file No. 1837272, and recorded in volume 3334, page 306, records of said county; that at the time of the conveyance to them, defendants Erma Hirsch and Julia C. Ballint had no actual or constructive knowledge of said action No. 240012 pending against Sarah Humphrey, except the case of Casaro v. Humphrey (No. 240012) was pending on September 8, 1925, and had been from a prior term of court.

"(4) That no sale was ever had of the chattels ordered sold in said case No. 240012, the plaintiff claiming that the chattels could not be found, and a præcipe was filed on behalf of the plaintiff in said former action, and execution was issued to the sheriff of Cuyahoga county, Ohio, on January 4, 1926; that the sheriff made a return that no goods

or chattels of the judgment debtor being found on January 5, 1926, be [he] levied on parcel 1 (said sublot 444) and parcel 2 described in the petition.

"(5) That this action was instituted by the judgment creditor, Guy Casaro, on January 22, 1926, to marshal liens on said real property.

"(6) That defendants Erma Hirsch and Julia C. Ballint and their husbands conveyed said sublot No. 444 to defendants Eugene Borsits and Rosa Borsits, by deed dated December 18, 1925, filed for record February 16, 1926, bearing serial file No. 1853585, records of said county; that this conveyance was for a valuable consideration, and at the time of said conveyance said defendants Eugene Borsits and Rosa Borsits had no actual knowledge of said action No. 240012, nor of the judgment obtained therein, nor of this action, but this action No. 253973 was pending at the time of transfer."

To determine the issues it is necessary to interpret Section 11656 of the General Code of Ohio as it stood prior to the amendment in 112 Ohio Laws, p. 199. The original section reads as follows:

"Such lands and tenements within the county where the judgment is entered shall be bound for its satisfaction *from the first day of the term at which it is rendered,* except that judgment by confession and judgments rendered at the same term at which the action is begun, shall bind such lands only from the day on which such judgments are rendered. All other lands as well as goods and chattels of the debtor, shall be bound from the time they are seized in execution."

The amendment in 112 Ohio Laws, above noted, reads as follows:

"Sec. 11656. Such lands and tenements within the county where the judgment is entered shall be bound for its satisfaction from the day on which such judgment is rendered.

"All other lands, as well as goods and chattels of the debtor shall be bound from the time they are seized in execution."

The meaning and significance of above words, phrases, and clauses admit of no doubt. The conclusions deducible are irresistible and inevitable. The lands situated within the county where the judgment is entered shall be bound. To bind means to fetter, fasten, and to tie up. And for what purpose? For the satisfaction of the judgment. Now comes the important question. From when? *From the first day of the term at which the judgment is rendered.* Thus giving to each word its plain, unmistakable sense and significance, it appears to us conclusive that the lien upon the land dates from the first day of the term in cases like the one at bar. where the action was commenced at a prior term and the judgment rendered at a succeeding term.

In this section under discussion time is an essential element because it fixes the running of the judgment and lien. In three different places in this statute, as unamended, we notice the legislative care and intent as to this subject. Notice the three following quotations as bearing upon this element of time, impregnated in the statute:

First: "From the first day of the term at which it is rendered."

Second: "Shall bind such lands only from the day on which such judgments are rendered."

Third: "Shall be bound from the time they are seized in execution."

When we come to the section as amended, we again see the legislative caution as to time, in the following language: "Shall be bound for its satisfaction from the day on which such judgment is rendered." The Legislature seems to have recognized the practical uniformity of the decisions of the Ohio courts and elsewhere on this subject when it amended the section by changing the language, "Shall be bound for its satisfaction from the first day of the term at which it is rendered," to the language of the amendment, "Shall be bound for its satisfaction from the day on which such judgment is rendered."

It is conceded that the amendment does not govern the case at bar, but the amendment was necessary in order to give that construction to the original section which the defendants insist is the proper interpretation.

The uniformity of holding in the higher courts made necessary the amendment embodied in 112 Ohio Laws, p. 199, before there could be eliminated from the original statute the plain and inevitable meaning of the language, "shall be bound for its satisfaction from the first day of the term at which it is rendered." That the defendants were innocent purchasers does not, in our judgment, change the effect and power of the statute, because there are no exceptions within its provisions that make any exceptions to innocent purchasers, and the authorities are overwhelming that such a condition does not affect the operation of the statute or the principle of law involved; and the fact that the judgment debtor did not own the property in question when the judg-

ment was actually rendered is equally ineffective for the same reasons. The fact that the case was commenced at a prior term and the judgment rendered at a subsequent term made a record that left a trail visible to any future purchasers who saw fit to make an investigation of the records of the courts, where judgments create liens upon lands subject always to transfers and conveyances of title, and the presumption of knowledge of the law, to wit, Section 11656, is inescapable under the overwhelming authorities as to innocent purchasers.

Section 11300 provides as follows:

"When the summons has been served or the publication made, the action is pending so as to charge third persons with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title."

We think the law applicable to the case at bar is well stated in 25 Cyc., 1450:

"General rule is that one not a party to a suit is not affected by the judgment. The exception is that one who acquired an interest in property which is at that time involved in litigation in a court having jurisdiction of the subject-matter and of the person of the one from whom the interests are acquired, from a party to the proceeding, takes subject to the judgment or decree, and is as conclusively bound by the result of the litigation as if he had been a party thereto from the outset. This is so irrespective of whether he has been made a party to the proceeding, or had actual notice of the pendency of the proceeding. * * * It is immaterial that a pur-

chaser was a *bona fide* purchaser and for valuable consideration.''

In *Urbana Bank* v. *Baldwin*, 3 Ohio, 65, we find corroboration of our views, where it was held that the lien relates to the first day of the term; that where a term commenced on the 20th, and judgment was taken during the term on the 25th, and the defendant conveyed his lands to a *bona fide* purchaser on the 21st of the same month, the judgment held the lands.

Able counsel for defendants, to sustain their claim that the judgment and lien do not date back to the first day of the term, cite the decision of our Supreme Court rendered December 28, 1926, appearing in *Cleveland Railway Co.* v. *Williams,* 115 Ohio St., 584, 155 N. E., 133, but we think that this authority is in favor of our analysis and reasoning in the case at bar, because it reversed this court for holding that interest on judgments accrued from the first day of the term, on the ground that upon the subject of interest the statute was silent, but where the statute spoke as to judgments it was conceded that the judgment itself would date back to the first day of the term, where the action was begun in a prior term. The very syllabus in the *Williams case* makes it clear that there was no doubt as to the judgments dating from the first day of the term, as can be seen by its language:

''A judgment for damages in an action for personal injuries bears interest from the date of its rendition and not from the first day of the term.''

Holding these views, a decree may be entered for the plaintiff.

*Decree for plaintiff.*

Vickery and Levine, JJ., concur.